IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Brook Graham-Willis, | ) | C/A No.: 1:12-2489-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

1

I.    Relevant Background

    A.    Procedural History

On February 13, 2009, Plaintiff filed an application for DIB in which she alleged her disability began on December 1, 2006. Tr. at 80–83. Her application was denied initially and upon reconsideration. Tr. at 63–64. On June 30, 2010, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Ivar E. Avots. Tr. at 27–62 (Hr'g Tr.). The ALJ issued an unfavorable decision on August 18, 2010, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 13–22. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on August 28, 2012. [Entry #1].

    B.    Plaintiff's Background and Medical History

        1.    Background

Plaintiff was 44 years old at the time of the hearing. Tr. at 35. She completed high school. *Id.* Her past relevant work ("PRW") was as an IT supervisor and trainer, as a scheduler, and in customer service. Tr. at 55. She alleges she has been unable to work since December 1, 2006. Tr. at 80.

        2.    Medical History

Plaintiff was diagnosed with multiple sclerosis ("MS") in 2003. Tr. at 158, 179–81, 307. The record documents Plaintiff's treatment for MS, symptoms related to MS, and depression. While the undersigned typically provides a detailed summary of a

plaintiff's medical history, such a summary is rendered superfluous in this case because remand is warranted on a narrow legal issue and the parties have provided thorough medical summaries in their briefs [Entries #9, #10].

    C.    The Administrative Proceedings

        1.    The Administrative Hearing

            a.    Plaintiff's Testimony

At the hearing on June 30, 2010, Plaintiff testified that she stopped working in December 2006 due to fatigue, pain, confusion, and memory problems. Tr. at 38, 40. She said that she had a balancing problem, sleep issues, headaches, and difficulties using her arms and hands. Tr. at 39–41. She stated that she had trouble gripping objects and thought she could lift about 10 pounds. Tr. at 41. She also testified that she was depressed. Tr. at 48–49. She testified that she could walk for a block before stopping, could stand and sit for about 20 minutes at a time. Tr. at 39–40. She stated that her medications made her nauseous and "knock[ed] her out." Tr. at 47.

Plaintiff testified that she had difficulty getting dressed, and could not cook, clean the kitchen, or do any household work. Tr. at 42–43. She said she did not do any shopping. Tr. at 44. She said she attended church regularly, but could not sit through the service. Tr. at 42. She testified that she did not visit friends or relatives and could not hold a schedule. Tr. at 43, 48.

Plaintiff stated that she served two-and-a-half years in prison for stealing $1,200 from the PTA. Tr. at 44, 53.

3

### b.    Vocational Expert Testimony

Vocational Expert ("VE") Karl Weldon reviewed the record and testified at the hearing. Tr. at 54. The VE categorized Plaintiff's PRW as an IT supervisor and trainer as light, skilled work; as a scheduler as light, skilled work; and in customer service as light, semi-skilled work. Tr. at 55. The VE stated that the individual would have transferable job skills including the ability to work effectively with others; to handle negotiations; to keep records; and to understand the working of construction business timetables. Tr. at 55–56. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform light work. Tr. at 56. The VE testified that the hypothetical individual could return to Plaintiff's PRW. *Id.* The ALJ then further limited the hypothetical individual to sedentary work. *Id.* The VE stated that the hypothetical individual would still have transferrable skills and would be able to perform the jobs of account information clerk, assignment clerk, and customer service representative. Tr. at 57. The ALJ further limited the hypothetical individual to jobs with occasional interaction with the public; no quota or pace work; and simple, routine, and repetitive tasks for two-hour blocks of time in an eight-hour day. *Id.* The VE stated that there would be no transferable skills, but that the individual could perform the light jobs of kitchen helper and housekeeper. Tr. at 57–58. The VE further stated that at the sedentary level, the individual could perform the jobs of order clerk and office clerk. Tr. at 58–59.

Finally, based on Dr. Kooistra's opinion, the ALJ limited the hypothetical individual to walking only one block, standing/walking less than two hours in an eight-

4

hour workday, sitting about four hours total in an eight-hour workday, and lifting/carrying rarely more than 10 pounds. Tr. at 59. The ALJ also stated that the individual would require unscheduled breaks and would be absent from work more than four days per month. *Id.* The VE testified that these limitations would preclude all work. *Id.* The VE stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), but not totally reliant on it. *Id.*

Upon questioning by Plaintiff's counsel, the VE stated that the jobs he identified in response to questioning by the ALJ would be unavailable if the hypothetical individual was limited to using her fingers and hands for only 10 percent of the workday and was limited to reaching for only five percent of the workday. Tr. at 60.

2. The ALJ's Findings

In his decision dated August 18, 2010, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.
2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2006 through her date last insured of December 31, 2007 (20 CFR 404.1571 *et seq.*).
3. Through the date last insured, the claimant had the following severe impairments: multiple sclerosis with fatigue and depression (20 CFR 404.1520(c)).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). I specifically find the claimant to be limited to occasional interaction with public. She is limited to a non-production work environment without

       quotas. She is further limited to simple, routine, repetitive tasks and she could perform this for 2-hour blocks of time out of an 8-hour workday.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on August 13, 1965 and was 42 years old, which is defined as a younger individual age 18–44, on the date last insured (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2006, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

Tr. at 15–22.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ erred in discounting the opinion of Plaintiff's treating physician;

2)    the ALJ failed to resolve a conflict between the VE's testimony and the DOT; and

3)    the ALJ failed to conduct a proper RFC assessment.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

7

impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v.*

---

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

  B.  Analysis

   1.  Conflict Between VE Testimony and DOT

The VE testified that, with the limitations that the ALJ ultimately included in the RFC, Plaintiff could perform the jobs of order clerk and office clerk. Tr. at 58–59. The ALJ relied on the VE's testimony to find that Plaintiff was not disabled under the Act. Tr. at 22. Plaintiff argues that the VE's testimony regarding these jobs conflicts with the reasoning level identified in the DOT. [Entry #9 at 28–30]. Specifically, Plaintiff contends that her RFC limitation to simple, routine, and repetitive tasks renders her unable to perform the jobs identified by the VE. *Id.* at 29.

The DOT provides that the jobs of order clerk (DOT #209.567-014) and office clerk (DOT #237.367-046) have a general educational development ("GED") reasoning level of 3, which requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and the ability to "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT (4th Ed., Rev. 1991), *available at* 1991 WL 671794 (DOT #209.567-014) and 1991 WL 672194 (DOT #237.367-046). Pursuant to SSR 00-4p, before relying on VE testimony to support a disability determination, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a VE and information in the DOT. SSR 00-4p, at *4. The ALJ "will explain in the

determination or decision" how he resolved the conflict and "must explain the resolution of the conflict irrespective of how the conflict was identified." *Id.*

Plaintiff contends that remand is warranted because the ALJ failed to obtain an explanation for the conflict between Plaintiff's RFC and GED reasoning level three set forth in the DOT. [Entry #11 at 10]. Relying on case law from other jurisdictions, the Commissioner argues that a GED reasoning level of three is not inconsistent with the ability to perform only simple tasks. [Entry #10 at 21]. The Fourth Circuit Court of Appeals has not spoken on this issue and the circuits that have addressed it are split.[4] Likewise, district courts within the Fourth Circuit are split on the issue. *See Weaver v. Colvin*, C/A No. 1:10CV582, 2013 WL 3989561, at n.14 (M.D.N.C. Aug. 2, 2013) (collecting cases). In the District of South Carolina, however, the court has repeatedly found that a limitation to simple or routine tasks conflicts with jobs requiring a GED reasoning level of three and that such a conflict must be addressed and resolved by the ALJ. *See Phillips v. Astrue*, C/A No. 3:11-1085-MBS, 2013 WL 353604, at *2 (D.S.C.

---

[4] *Compare Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding apparent conflict between job requiring reasoning level three and claimant's limitation to simple and routine work tasks) *with Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict between job requiring reasoning level of three and claimant's limitation to simple work) and *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no apparent conflict between job requiring reasoning level three and claimant's inability to do complex technical work). Although the Ninth Circuit Court of Appeals has not definitively addressed the issue, the majority of district courts within the Ninth Circuit have concluded that there is a conflict between a limitation to simple, routine, repetitive work and level three reasoning. *See Espinoza v. Astrue*, C/A No. 5:12-cv-00544-OP, 2013 WL 327889, at *3 (C.D. Cal. Jan. 29, 2013) (unpublished) (recognizing that the Ninth Circuit has not addressed the issue directly, but "the weight of authority in this Circuit holds that a limitation to simple, repetitive or routine tasks is incompatible with a reasoning level of 3") (collecting cases).

11

Jan. 29, 2013) (holding that the Commissioner's position that the plaintiff, who was limited to "simple, one to two step tasks," could perform jobs GED reasoning levels of two or three was not substantially justified); *Reid v. Astrue*, C/A No. 6:10-2118-MBS-KFM, 2012 WL 667164, at *12–13 (D.S.C. Feb. 8, 2012) (finding an apparent conflict between the plaintiff's ability to perform simple, routine, repetitive tasks and GED reasoning level of three), *adopted by* 2012 WL 663482; *Martin v. Astrue*, C/A No. 6:11-1572-TMC-KFM, 2012 WL 4479280, at *15–16 (finding there was an unexplained potential conflict between GED reasoning levels two and three and the plaintiff's ability to perform no more than unskilled tasks; short, simple instructions; minimal changes in routine; and limited interaction with the public, supervisors, and co-workers), *adopted by* 2012 WL 4482943 (D.S.C. July 27, 2012); *see also Patterson v. Astrue*, C/A No. 8:07–1602–HFF–BHH, 2008 WL 2944616, at *5 (D.S.C. July 31, 2008) (noting vocational expert never expressly discussed whether plaintiff's inability to perform more than 1–2 step instructions was compatible with the position requiring at least a reasoning level of two); *Tadlock v. Astrue*, C/A No. 8:06–3610–RBH-BHH, 2008 WL 628591, at *10 (D.S.C. March 4, 2008) (remanding so that the vocational expert could give testimony as to whether the plaintiff could perform the recommended jobs, which had a reasoning level of two, considering the claimant's inability to do more than simple and routine work).

To the extent the Commissioner argues that the VE properly explained the conflict between his testimony and the DOT, the argument is unavailing. The VE testified that his testimony was "consistent with the Dictionary of Occupational Titles but not totally

reliant upon it." Tr. at 59. However, the VE failed to provide any explanation of how his testimony differed from the DOT or the basis on which he relied in resolving any conflicts between Plaintiff's RFC and the jobs he identified.

While there may be a reasonable explanation for the apparent conflict, it is the responsibility of the ALJ to inquire as to any such conflict on the record and provide a reasonable explanation on the record prior to relying on the evidence provided by the vocational expert. SSR 00–4p. Accordingly, the undersigned recommends remand for resolution of the apparent conflict.

### 2.     Remaining Allegations of Error

Because the undersigned recommends remand based on the ALJ's legal error in failing to resolve the conflict described above, Plaintiff's remaining allegations of error are not addressed. The undersigned notes, however, that the ALJ offered several valid reasons for discounting Dr. Kooistra's opinion. With regard to Plaintiff's contention that the ALJ's RFC assessment was improper, the undersigned notes that it was not necessary for the ALJ to prepare a function-by-function analysis for impairments that he did not find credible or supported by the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### III.   Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to

the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

    IT IS SO RECOMMENDED.

*Shiva V. Hodges*

December 6, 2013  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).